# ORIGINAL

# In the United States Court of Federal Claims

No. 11-97C
Filed: August 12, 2011
**TO BE PUBLISHED**

**FILED**

AUG 1 2 2011

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
|  |  |
|---|---|
| LAWRENCE TERRY, | Federal Tort Claims Act, 28 U.S.C. §§ 2671-80; |
| Plaintiff, *pro se*, | Motion To Dismiss, RCFC 12(b)(1), (6); |
|  | Pro Se; |
| v. | RESTATEMENT (SECOND) OF CONTRACTS § 353 (1981); |
|  | Postal Service Regulations, 39 C.F.R. §§ 111.1, 211.2(a)(2); |
| THE UNITED STATES, | Tucker Act, 28 U.S.C. § 1491; |
| Defendant. | United States Postal Service, *Domestic Mail Manual* §§ 508.4.2.1, 609.4.3(g). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Lawrence Terry, Plaintiff, *pro se*.

Elizabeth Anne Speck, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.     RELEVANT FACTS.[1]

On November 17, 2009, Lawrence Terry ("Plaintiff") prepaid for six months' use of a post office box (the "PO Box") located in the Columbia, South Carolina Post Office ("Columbia P.O."). Compl. ¶ 1. On January 14, 2010, Plaintiff filed a Complaint at the United States District Court for the District of South Carolina ("District Court"), alleging that Allen Univerity was negligent in sending his transcripts to other universities. *See Terry* v. *Allen Univ.*, No. 3:10-90 (D.S.C. filed Jan. 14 , 2010). Plaintiff used the PO Box as his mailing address for this action. Compl. ¶ 1.

---

[1] The relevant facts were derived from the February 14, 2011 Complaint ("Compl."), the Exhibits to the Government's April 15, 2011 Motion To Dismiss ("Gov't Ex. A1-A41"), and the Exhibits to Plaintiff's April 20, 2011 Motion for Summary Judgment ("Pl. Ex. A-D").

In February 2010, Plaintiff attempted to mail six letters to Bermuda using the PO Box as the return address. *Id.* On February 17, 2010, three of the six letters intended for Bermuda were returned to the PO Box for insufficient postage. *Id.* On March 5, 2010, documents sent by the District Court to the PO Box regarding *Allen University* were returned to the court as "undeliverable." *Id.*

On March 23, 2010, Plaintiff called the District Court regarding the status of *Allen University*. *Id.* The District Court informed Plaintiff that he missed the deadline to respond to a motion, and attempts to contact him by mail were returned as "undeliverable at that address." *Id.* On that same date, Plaintiff went to the Columbia P.O. to inquire as to why he was not receiving mail. *Id.* Employees at the Columbia P.O. told Plaintiff that he needed to speak to Hank, the employee in charge of opening and closing PO boxes, but Hank was not present. *Id.*

On March 24, 2010, Plaintiff returned to the Columbia P.O. to speak to Hank and the Columbia P.O. manager. *Id.* During that visit, Hank stated that he never labeled the PO Box, and told Plaintiff that he "do[es] it when [he] get[s] time to." Compl. ¶ 1; *see also* Pl. Ex. C, D (Plaintiff's audio recording of his March 24, 2010 conversations at the Columbia P.O.). Plaintiff declined a refund for the cost of the PO Box offered by the Columbia P.O. manager because a refund "could never cover the stress [Plaintiff] went through." Compl. ¶ 1; Pl. Ex. D. Plaintiff alleges that the only mail he received at the PO Box was the three returned letters intended for Bermuda. Compl. ¶ 1.

On March 25, 2010, Plaintiff filed an administrative tort claim with the United States Postal Service ("USPS") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, for mislabeling the PO Box and causing him to miss a court deadline in *Allen University*. *See* Gov't Ex. A1-A6.

On April 12, 2010, the District Court dismissed Plaintiff's January 14, 2010 Complaint in *Allen University* for lack of subject matter jurisdiction. *See Terry v. Allen Univ.*, No. 3:10-90, slip op. at 2 (D.S.C. Apr. 12, 2010).

On August 5, 2010, the USPS denied Plaintiff's administrative tort claim. *See* Gov't Ex. A1-A6.

On August 11, 2010, Plaintiff filed a Complaint against the USPS in the District Court, alleging a claim of negligence for the USPS's failure to properly label the PO Box. *See Terry v. United States Postal Service*, No. 3:10-2095 (D.S.C. filed Aug. 11, 2010). On November 22, 2010, the District Court dismissed the August 11, 2010 Complaint, holding that the Government had not waived sovereign immunity with respect to Plaintiff's claims. *See Terry v. United States Postal Service*, No. 3:10-2095, slip op. at 2-4 (D.S.C. Nov. 22, 2010). On January 6, 2011, Plaintiff appealed the dismissal of the August 11, 2010 Complaint to the United States Court of Appeals for the Fourth Circuit.

On January 7, 2011, Plaintiff filed another Complaint against the USPS in the District Court, based on the same facts as the August 11, 2010 Complaint. *See Terry v. United States*, No. 3:11-0057 (D.S.C. filed Jan. 7, 2011). On March 7, 2011, the District Court dismissed the

2

January 7, 2011 Complaint in the interest of judicial economy and efficiency, because it was duplicative to the August 11, 2010 Complaint. *See Terry v. United States*, No. 3:11-0057, slip op. at 1-2 (D.S.C. Mar. 7, 2011).

On March 21, 2011, the United States Court of Appeals for the Fourth Circuit affirmed the District Court's dismissal of Plaintiff's August 11, 2010 Complaint. *See Terry v. United States Postal Service*, 418 Fed. Appx. 266 (4th Cir. 2011).

## II. PROCEDURAL HISTORY.

On February 14, 2011, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims against the USPS. The February 14, 2011 Complaint alleges that an employee of the USPS intentionally and in bad faith breached a contract with Plaintiff by failing to properly label the PO Box, causing Plaintiff to miss important mail regarding employment and court filings in other civil cases. Compl. ¶ 1. On February 17, 2011, the court granted Plaintiff's Motion For Leave To Proceed *In Forma Pauperis.*

On April 15, 2011, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rules 12(b)(1), (6) of the Rules of the United States Court of Federal Claims ("RCFC"), together with Exhibits ("Gov't Mot. Ex. A1-A41"). On April 20, 2011, by leave of the court, Plaintiff filed a Motion For Default Judgment, Or In The Alternative, Motion For Summary Judgment, together with Exhibits ("Pl. Ex. A-D"). On that same date, the court denied the Motion For Default Judgment and directed Plaintiff to indicate in his response to the April 15, 2011 Motion To Dismiss whether he would like to proceed with his Motion For Summary Judgment. On April 22, 2011, Plaintiff filed a Response ("Pl. Resp."), and, by leave of the court, a Motion To Amend The Complaint. On that same date, the court issued an Order staying consideration of Plaintiff's April 20, 2011 Motion For Summary Judgment until ruling on the Government's April 15, 2011 Motion To Dismiss.

On May 6, 2011, the Government filed a Response to Plaintiff's April 22, 2011 Motion To Amend Complaint. On May 9, 2011, the Government filed a Reply ("Gov't Reply"). On May 10, 2011, the court issued an Order granting Plaintiff's Motion To Amend Complaint. In addition, the court determined that, because the May 10, 2011 Amended Complaint only changed the named defendant and did not make any additional factual or legal allegations, the Government's April 15, 2011 Motion To Dismiss was only moot to the extent that it argued the February 14, 2011 Complaint should be dismissed for failure to name the proper defendant. On June 13, 2011, by leave of the court, Plaintiff filed a Statement Of Additional Facts For Summary Judgment.

## III. DISCUSSION.

### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or

any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The February 14, 2011 Complaint alleges that the court has jurisdiction to adjudicate the claims alleged therein, because a contract was formed with the United States when Plaintiff prepaid for use of the PO Box. Compl. ¶ 1. These jurisdictional allegations are discussed below.

### B.   Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975).   Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (internal citations omitted).

The February 14, 2011 Complaint alleges that Plaintiff suffered emotional distress, sleeping problems, emotional control issues, and "diminished . . . everyday enjoyment of life," as a result of the Government's breach of contract. Compl. ¶ 1. Because the February 14, 2011 Complaint alleges an actual injury that is traceable to the Government's actions and would be redressed by a favorable decision, the court has determined that Plaintiff has standing.

### C.   *Pro Se* Litigants.

The pleadings of a *pro se* Plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers" (citations omitted) (internal quotation marks omitted)). Indeed, it has been the tradition of this court to examine the record "to see if [a *pro se*] Plaintiff has a cause

4

of action somewhere displayed." *Ruderer* v. *United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* Plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke* v. *United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

**D.     Standard For Decision On Motion To Dismiss Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797. Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**E.     Standard for Decision On Motion To Dismiss Pursuant To RCFC 12(b)(6).**

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) (internal quotation marks omitted). In order to survive a motion to dismiss, however, the court "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft* v. *Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); *but see Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

**F.     The Government's April 15, 2011 Motion To Dismiss.**

**1.     The Government's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Pursuant To RCFC 12(b)(1) Is Granted.**

**a.     The Government's Argument.**

The Government argues that the court does not have jurisdiction to adjudicate the claims alleged in the February 14, 2011 Complaint because Plaintiff's claims sound in tort. Gov't Mot. at 6. The Tucker Act excludes tort claims against the Government from the United States Court of Federal Claims' jurisdiction. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . in cases not sounding in tort."). Claims for the mishandling of mail sound in tort, and not breach of contract. *See Blazavich v. United States*, 29 Fed. Cl. 371, 374 (1993) (holding that the United States Court of Federal Claims lacked subject matter jurisdiction to adjudicate a claim for lost textbooks because claims regarding lost postal matter sound in tort). In *Naskar v. United States*, 82 Fed. Cl. 319 (2008), the United States Court of Federal Claims dismissed plaintiff's claim for mental harassment due to damage to a package he attempted to ship through the USPS, finding that, "[b]ecause plaintiff's claim is for damages due to negligence, it sounds in tort and the [United States] Court of Federal Claims does not have jurisdiction over it." *Id.* at 321 (citation omitted). In the present case, had Plaintiff received the mail he was expecting he would not have filed a claim against the United States. Gov't Mot. at 6-7. Therefore, because the February 14, 2011 Complaint alleges that the USPS mishandled mail by mislabeling Plaintiff's PO Box, the court lacks jurisdiction to adjudicate the claims alleged therein. *Id.*

In addition, the Government argues that sovereign immunity has not been waived with respect to the claims alleged in the February 14, 2011 Complaint. Gov't Mot. at 6-8. In *Lucas v. United States*, 228 Ct. Cl. 860 (1981), the United States Court of Claims dismissed the plaintiff's complaint for the delay in delivery of mail for lack of subject matter jurisdiction because Congress explicitly omitted the mishandling of mail from the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(b) ("The provisions of [the Tort Claims Procedure] chapter and section 1346(b) of this title shall not apply to . . . any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."). Similarly, in *Persick v. United States Postal Service*, No. A 00-5062, 2001 WL 185543 (E.D. Pa. Feb. 23, 2001), the United States District Court for the Eastern District of Pennsylvania dismissed a tort claim artfully replead as a breach of contract claim, because 28 U.S.C. § 2680(b) unambiguously bars suits arising from the mishandling of mail. *Id.* at *1 (failure to deliver stock options on time was a tort claim and not a breach of contract because the delay in delivery was due to negligence).

**b.     The Plaintiff's Response.**

Plaintiff responds that because the February 14, 2011 Complaint alleges a breach of contract, and not a claim for the mishandling of mail, the court has jurisdiction to adjudicate the claims alleged therein. Pl. Resp. ¶ 1. Plaintiff argues that the February 14, 2011 Complaint "is not the artful repleading of a tort claim as a contract claim since [n]egligence and [b]reach of [c]ontract are two completely different causes of action." *Id.* The February 14, 2011 Complaint only uses the term "negligence" once, in the context of a postal employee speaking to Plaintiff. *Id.*

In addition, there was a contract between Plaintiff and the USPS because all of the basic elements of a contract are present: an offer for a service provided by the USPS, an acceptance by Plaintiff, and consideration by both parties. *Id.* Plaintiff argues that he fulfilled his contractual duties by paying for the PO Box. *Id.* The Government, however, breached the contract by not

6

labeling the PO Box until the fifth month of a six month rental period. *Id.; see also* Pl. Ex. D (audio recording of employees of the Columbia P.O. admitting to not labeling the PO Box in a timely fashion). Therefore, this court has jurisdiction to adjudicate the breach of contract claim alleged in the February 14, 2011 Complaint. *Id.* at 1-2.

### c.    The Government's Reply.

The Government replies that Plaintiff has failed to establish this court's jurisdiction because the February 14, 2011 Complaint alleges tort claims, including claims for emotional distress and pain and suffering. *See Ancman* v. *United States*, 77 Fed. Cl. 368, 373 (2007) (dismissing plaintiffs' claims for emotional distress and pain and suffering resulting from a reduction in early retirement pay because the United States Court of Federal Claims lacked jurisdiction to adjudicate tort claims); *see also Pratt* v. *United States*, 50 Fed. Cl. 469, 482 (2001) (holding that the United States Court of Federal Claims lacks jurisdiction to award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law). The Government also argues that Plaintiff has not demonstrated this court has jurisdiction, nor proffered any evidence to warrant an award of $500,000 for the mislabeling of the PO Box. Gov't Reply at 2-3.

### d.    The Court's Resolution.

Pursuant to the Tucker Act, the United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). Plaintiff argues that an express contract was formed with the Government when he prepaid for the use of the PO Box because there was an offer, acceptance and consideration. To establish a valid contract with the United States, however, three criteria must be met:

> (1) an explicit agreement with the United States exists; (2) the agreement was executed by someone who possessed actual authority to bind the government in contract; and (3) the agreement entitles the [plaintiff] to monetary relief.

*Cottrell* v. *United States*, 42 Fed. Cl. 144, 150 (1998). If Plaintiff cannot establish each of these elements, the court does not have jurisdiction. *Id.*

In this case, to the extent that there is an explicit agreement between Plaintiff and the USPS, the agreement is limited to the use of the PO Box, and does not hold the USPS liable for any damages associated with the use of the PO Box or mishandling of mail. In addition, even if there was an explicit agreement between Plaintiff and the USPS, the agreement was not executed by an authorized agent of the United States. Finally, the PO Box agreement on the USPS website did not entitle Plaintiff to monetary relief for breach of contract or emotional distress resulting from the mislabeling of the PO Box. For these reasons, the court has determined there was no contract between Plaintiff and the Government, and Plaintiff has no claim for a breach of contract.

In addition, the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate claims relating to the mishandling of mail because those claims sound in tort. *See Naskar*, 82 Fed. Cl. at 321 ("[Plaintiff] alleges that the willful or negligent misconduct of the USPS caused a torn, ripped, and badly damaged article to be returned to him, causing him mental harassment . . . this is a claim sounding in tort." (internal quotation marks omitted)); *see also Blazavich*, 29 Fed. Cl. at 374 ("Plaintiff's case appears to arise out of the *negligent or tortious handling* of the mail by the USPS, and we so find, and, *as such,* should be dismissed." (internal quotation marks omitted)). The claim alleged in the February 14, 2011 Complaint concerns the potential mishandling of mail through the mislabeling of the PO Box. Compl. ¶ 1. Therefore, the court lacks subject matter jurisdiction to adjudicate the claims alleged in the February 14, 2011 Complaint.

Finally, the court lacks jurisdiction to adjudicate the emotional distress claims alleged in the February 14, 2011 Complaint because claims for emotional distress sound in tort. It is well settled that claims for emotional distress are tort claims, and beyond the jurisdiction of this court. *See Ancman*, 77 Fed. Cl. at 373 ("[c]laims for . . . mental anguish sound in tort").

For the above stated reasons, the court has determined that it does not have jurisdiction to adjudicate the claims alleged in the February 14, 2011 Complaint.

### 2. The February 14, 2011 Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

#### a. The Government's Argument.

In the alternative, the Government argues that the February 14, 2011 Complaint should be dismissed, pursuant to RCFC 12(b)(6), because Plaintiff has not alleged a violation of postal regulations, a prerequisite for a claim involving postal matters. *See Twentier* v. *United States,* 109 F. Supp. 406, 408-09 (Ct. Cl. 1953) (plaintiff was barred from recovering the cost of replacing lost pins and rings because Postal Service regulations, which are published in the USPS Domestic Mail Manual,[2] did not assign liability for lost mail items sent through fourth class mail). In *Djordjevic* v. *United States Postal Service,* 957 F. Supp. 31 (E.D.N.Y. 1997), the United States District Court for the Eastern District of New York held that the plaintiff did not have a claim to recover lost cash that he mailed to Russia because Postal Service regulations did not provide recovery for loss of prohibited items such as currency. *Id.* at 34. Likewise, the DMM does not allow for damages for emotional distress, mental anguish, or any related malady stemming from the mishandling of mail or mislabeling of PO Boxes. *See* United States Postal Service, *Domestic Mail Manual,* § 609.4.3(g) ("Indemnity is not paid for insured mail, Registered Mail, COD, or Express Mail [for] . . . [c]onsequential loss claimed[,] rather than the actual value of the article."). Because the DMM does not allow for recovery of consequential damages such as emotional distress, the February 14, 2011 Complaint fails to state a claim upon which relief can be granted.

---

[2] The USPS Domestic Mail Manual ("DMM") is incorporated by reference at 39 C.F.R. §§ 111.1, 211.2(a)(2), and is available at http://pe.usps.com/text/dmm300/dmm300_landing.htm.

In addition, the Government argues that Plaintiff has failed to state a claim "because domestic mail services are governed by statutory authority set forth in the Postal Service regulations." *Rogers* v. *United States Postal Service*, No. 05-00158, 2005 WL 3369982 at *3 (W.D. Va. Dec. 12, 2005). Thus, even if the USPS contracted to timely label Plaintiff's PO Box, there is no statutory authority assigning liability to the Government for failing to do so. Gov't Mot. at 9.

Finally, the Government argues that Plaintiff's claim for damages is too speculative for the court to provide relief. Gov't Mot. at 10. The United States Court of Appeals for the Federal Circuit has held that lost profits resulting from a breach of contract are not recoverable if there is not sufficient evidence showing a reasonable basis for the amount of damages claimed. *See First Fed. Lincoln Bank* v. *United States*, 518 F.3d 1308, 1319 (Fed. Cir. 2008) ("A claim for an attenuated loss resulting from a breach . . . must not be speculative and must be supported by evidence providing a reasonable basis for the amount of damages."); *see also Ramsey* v. *United States*, 121 Ct. Cl. 426, 433 (1951) (interest accrued from a loan plaintiffs took to avoid bankruptcy, as a result of a delayed payment by the Government, was not recoverable because it was not reasonably foreseeable that the plaintiffs would go bankrupt if the Government did not make the payments on time). The Government argues that Plaintiff's claims must also be dismissed because Plaintiff has not proffered any evidence that he lost any money as a result of the mislabeling of his PO Box. Gov't Mot. at 11.

### b.    The Plaintiff's Response.

Plaintiff responds that damages for emotional distress due to breach of contract are appropriate in this case. Pl. Resp. at 2. In *Westervelt* v. *McCullough*, 228 P. 734 (Cal. Ct. App. 1924), the plaintiffs, an elderly couple, defaulted on their mortgage, and the house was sold at foreclosure. *Id.* at 735, 738. The buyer entered into a contract with plaintiffs allowing the plaintiffs to live in the house for the rest of their lives. *Id.* Six months after acquiring the house, however, the buyer breached the contract and ousted the elderly couple from the home, forcing the plaintiffs out onto the street, and directly causing the husband health problems that eventually led to his death. *Id.* The California Court of Appeals held that damages for emotional distress caused by the breach of contract were appropriate because the mental anguish arising from forcing the elderly couple onto the streets was within the contemplation of the parties at the time of the contract. *Id.* at 738. Plaintiff argues that knowing the post office employee failed to properly label the PO Box has left him emotionally distressed. Pl. Resp. at 2. Plaintiff argues that, although he did not suffer any physical or economic injury as a result of the alleged breach, he should be entitled to damages because the mislabeling of the PO Box caused him emotional distress akin to the emotional distress the plaintiffs suffered in *Westervelt*. Pl. Resp. at 2.

### c.    The Government's Reply.

The Government replies that the February 14, 2011 Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff has not alleged any violations of Postal regulations. Gov't Reply at 3. The DMM does not impose any contractual liability upon the USPS with respect to PO Boxes and prohibits any agreement contrary to the provisions set forth therein. *See* United States Postal Service, *Domestic Mail Manual* § 508.4.2.1

(2011). Even if the Columbia P.O. manager made a contract with Plaintiff that would award money damages for emotional distress in the event of a breach, such a contract would be unenforceable because it would contradict the provisions set forth in the DMM. *Id.* In *Blazavich*, the court dismissed a claim for a breach of an implied contract when the USPS lost the plaintiff's college textbooks because the plaintiff did not allege a violation of the postal regulations and the Government did not consent to liability for any such claims. *See Blazavich*, 29 Fed. Cl. at 374-75. In this case, the Government contends that Plaintiff has not alleged any violation of postal regulations, nor has the Government consented to be liable for breach of contract for failing to timely label the PO Box. Gov't Reply at 3.

### d.   The Court's Resolution.

Assuming, *arguendo*, that the court had jurisdiction to adjudicate the claims alleged in this action, the February 14, 2011 Complaint has failed to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6).

For a plaintiff to recover damages resulting from mishandling of postal matter, postal regulations must assign liability to the Government. *See Twentier*, 109 F. Supp. at 409. In *Twentier*, the United States Court of Claims held that because items shipped through the Army Postal System were shipped uncertified, unregistered, and without insurance, the Government was not liable for any damage because postal regulations did not explicitly assign liability to the Government for lost or damaged items sent in this manner. *Id.* In this case, the order page on the USPS website does not explicitly assign liability to the Government for mishandling of mail or the mislabeling of PO Boxes. Pl. Ex. C. In addition, the PO Box rental agreement on the USPS website does not state any acceptance of liability for damages based on breach of contract, emotional distress, or pain and suffering. *Id.* The February 14, 2011 Complaint fails to allege any violation of postal regulations. Therefore, Plaintiff cannot recover damages for emotional distress.

In addition, as a matter of law, the damages claimed are speculative. Plaintiff alleges emotional distress as a result of the USPS mislabeling the PO Box. Compl. ¶ 1. In a breach of contract action, however, "[r]ecovery for emotional [distress] will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." RESTATEMENT (SECOND) OF CONTRACTS § 353 (1981); *see also Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1340 (Fed. Cir. 2001) ("Under the traditional contract law approach, it is well established that, as a general rule, no damages will be awarded for the mental distress or emotional trauma that may be caused by a breach of contract. To be sure there are exceptions. . . . In these cases, however, breach of the contract is particularly likely to cause serious emotional disturbance." (quotation marks omitted) (citations omitted)); *Pratt*, 50 Fed. Cl. at 482 ("award damages for emotional consequences of a breach of contract . . . are speculative as a matter of law"). In this case, the February 14, 2011 Complaint does not provide a plausible factual basis to suggest that, at the time of contract formation, emotional distress was reasonably foreseeable or particularly likely as a result of mislabeling the PO Box. *See Iqbal*, 129 S.Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Further, the February 14, 2011 Complaint does not allege that

Plaintiff actually lost any potential job opportunities as a result of the mislabeling of the PO Box. Therefore, the court has determined that Plaintiff's damages claims are speculative.

Accordingly, the court has determined that the February 14, 2011 Complaint has failed to state a claim upon which relief can be granted.

## IV.    CONCLUSION.

For the reasons stated above, the Government's April 15, 2011 Motion To Dismiss, pursuant to RCFC 12(b)(1), (6) is granted.

The Clerk of the United States Court of Federal Claims is directed to dismiss the February 14, 2011 Complaint.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Judge**

11